Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TARA RETAIL GROUP, LLC | ) | |
| dba Tara Hotel Group, LLC, | ) | Case No. 17-bk-57 |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| | ) | |
| CONSTANCE AUTHUR-NELSON; | ) | Adversary No. 18-ap-11 |
| | ) | |
| THE ELSWICK COMPANY, LLC dba, | ) | Adversary No. 18-ap-12 |
| ANYTIME FITNESS ELKVIEW, | ) | |
| on behalf of themselves and all others | ) | |
| similarly situated; | ) | |
| | ) | |
| GEORGE LEESON and JACOB CRUM, | ) | Adversary No. 18-ap-13 |
| on behalf of themselves and all others | ) | |
| similarly situated; | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| U.S. BANCORP GOVERNMENT | ) | |
| LEASING AND FINANCE, INC. as | ) | |
| Trustee for the benefit of COMM 2013- | ) | |
| CCRE12 Mortgage Trust Commercial | ) | |
| Mortgage Pass-through Certificates; and | ) | |
| WELLS FARGO COMMERICAL | ) | |
| MORTAGE SERVICING | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Pending before the court are motions to dismiss the three above-captioned adversary proceedings filed against U.S. Bank, N.A., as Trustee for the benefit of COMM 2013-CCRE12

1

Mortgage Trust Commercial Mortgage Pass-Through Certificates ("U.S. Bank") and Wells Fargo Bank, N.A. ("Wells Fargo"). U.S. Bank and Wells Fargo (collectively, the "Defendants") seek the dismissal of the adversary proceedings based upon their respective failures to state causes of action upon which the court can grant relief. The Plaintiffs in each action contend that their complaints state claims upon which the court can grant relief based upon certain documents, including the Assignment of Leases and Rents between Tara Retail Group, LLC (the "Debtor"), and U.S. Bank.

For the reasons stated herein, the court will grant the Defendants' motions to dismiss and enter separate orders dismissing each of the above-captioned adversary proceedings.

## I.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a party may seek to dismiss a complaint against it when the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b). When evaluating a motion to dismiss, the court must (1) construe the complaint in a light favorable to the non-movant, (2) accept the factual allegations in the complaint as true, and (3) draw all reasonable inferences in favor of the plaintiff. 2 *Moore's Federal Practice – Civil* § 12.34 (2018). After undertaking these steps, the claim for relief must be "'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining a motion to dismiss, the court is not adjudicating whether a plaintiff will ultimately prevail on the merits of the complaint; it is only determining if the plaintiff is entitled to offer evidence to support the claims. *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011).

## II.  BACKGROUND

In September 2013, Tara Retail Group, LLC (the "Debtor"), entered into a Loan Agreement with UBS Real Estate Securities, Inc., to purchase property known as The Crossings Mall in Elk View, West Virginia. The Crossings Mall is a multi-tenant commercial property encompassing about 200,000 square feet. Public access to it is limited to a single bridge—formerly spanning a culvert—over Little Sandy Creek. In conjunction with the Debtor's purchase of the property, the Debtor executed a Promissory Note for $13,650,000 and secured its repayment thereof by executing a Deed of Trust and an Assignment of Leases and Rents (the "ALR"). Additionally, the Debtor executed a Cash Management Agreement and Management Agreement. UBS subsequently assigned the Loan Agreement and associated documents to U.S. Bank.

Wells Fargo services the loan and administers certain escrow accounts consistent with its role in that regard. Among other subaccounts created by the Loan Agreement, Wells Fargo maintains an account for Capital Expenditures, which the Loan Agreement defines as "the amounts expended for items required to be capitalized under GAAP (including expenditures for replacements, building improvements, major repairs, alterations, tenant improvements and leasing commissions)." Specifically, the Debtor was to deposit $3,493.62 monthly into the Capital Expenditure Account, and § 6.4.2 of the Loan Agreement controls the release of those funds. It provides, among other things, that the Defendants "disburse to [the Debtor] the Capital Expenditure Funds upon satisfaction by [the Debtor]" of various conditions. Among those conditions is that the Defendants "shall have received an Officer's Certificate (A) stating that all items to be funded by the requested disbursement are Capital Expenditures, [and] (B) stating that all Capital Expenditures to be funded by the requested disbursement have been completed in a good and workmanlike manner . . . ."

In January 2016, Wells Fargo received a request for a disbursement from the Capital Expenditure Account. According to the request, made by Gold Coast Partners, LLC,[1] the Debtor needed $24,000 to complete a repair of the then-existing culvert bridge and a slip affecting the Kmart leasehold. Notably, the Debtor had not yet effectuated the repairs at the time it requested the $24,000. It was apparently unable to make the repair without the Capital Expenditure Funds. According to the Plaintiffs, Wells Fargo did not approve the request.[2] In June 2016, significant rainfall caused debris and water to accumulate at the culvert bridge providing access to The Crossings Mall. Ultimately, Little Sandy Creek overflowed its banks and flooded bordering properties before washing away the culvert bridge. The resultant flooding and loss of access to The Crossings Mall are what give rise to the claims of Ms. Arthur-Nelson, George Leeson, and others similarly situated (collectively, the "Property Owners"),[3] and the other respective Plaintiffs.

---

[1] According to at least one complaint, Gold Coast acted as the landlord and manager of The Crossings Mall and is an affiliate of the Debtor.

[2] To be clear, the record does not reflect that Wells Fargo denied the request. Rather, it responded seeking certain information regarding the rent being paid by the Debtor's tenants.

[3] Ms. Arthur-Nelson is the only Plaintiff in Adversary Proceeding No. 18-ap-11. Mr. Leeson is a Plaintiff in Adversary Proceeding No. 18-ap-13, and he purportedly is also representative of a potential class of plaintiffs similarly situated. His claims, however, appear to be identical or

During the pendency of these proceedings and the extant motions to dismiss, litigation involving the same operative facts was underway in the United States District Court for the Southern District of West Virginia. In that action (No. 2:18-cv-01061), Dianna Nidy, who was employed by Kmart Corporation at the time of the flood, sued the Defendants based upon her loss of employment when Kmart was unable to operate after the flood. *See Nidy v. U.S. Bank*, 2019 WL 2537418, at *3 (S.D.W. Va. June 19, 2019). She asserted four causes of action against the Defendants: "(1) 'Breach of Duty Under Loan Documents Including the Servicing Standard'; (2) 'Breach of Fiduciary Duty Under the Power of Attorney Provision of the [ALR] and the Structure of the Financing Transaction'; (3) 'Tortious Interference with a Business Relationship'; and (4) 'Breach of General Duty of Care.' A fifth claim is simply a request for punitive damages." *Id*.

Here, the Plaintiffs are situated differently than Ms. Nidy, but they generally assert the same causes of action. For instance, Counts I, II, and IV of the Property Owners' amended complaint are identical to those alleged by Ms. Nidy, but they allege as Count III liability under *In re Flood Litig*., 607 S.E.2d 863 (W. Va. 2004), instead of tortious interference. Similarly, The Elswick Co., LLC ("Elswick"), is a tenant at The Crossings Mall and asserts six causes of action: (I) "Breach of Contract Under Loan Documents"; (II) "Breach of Duty of Care Under Loan Documents"; (III) "Breach of Fiduciary Duty Under the Power of Attorney Provision of the [ALR] and the Structure of the Financing Transaction"; (IV) "Tortious Interference with a Business Relationship"; (V) "Breach of General Duty of Care"; and a sixth count seeking punitive damages. Finally, Jacob Crum was a purported "customer, licensee and invitee" of Elswick and alleges breaches of a "General Duty of Care . . ." and a "Duty to Customers and Invitees on the Shopping Center Premises Under the [ALR]."[4]

On June 19, 2019, the District Court entered a memorandum opinion and order granting the Defendants' motion to dismiss Ms. Nidy's action, and the Defendants filed a copy thereof here in support of their extant motions to dismiss. Specifically regarding Ms. Nidy's first claim for

---

substantially like those of Ms. Arthur-Nelson such that the court will adjudge the sufficiency of their respective complaints together.

[4] To be clear, Mr. Crum's Second Amended Complaint includes a claim for liability under *Flood*. That is based, however, on Mr. Leeson being a plaintiff in that action. Because the court is adjudging the sufficiency of Mr. Leeson's claims with those of Ms. Arthur-Nelson, it will not substantively address that claim vis-à-vis Mr. Crum.

what it generally characterized as a breach of contract claim, the District Court dismissed the complaint based upon the "sole benefit" requirement codified in W. Va. Code § 55-8-12. *See Nidy*, 2019 WL 2537418, *4-6. Similarly regarding Ms. Nidy's second claim alleging a breach of a fiduciary duty, the District Court noted that "there is no contractual provision that establishes a fiduciary duty, and the relatively attenuated relationship between [Ms. Nidy] and the defendants is insufficient to create such a duty." *Id*. at *7. In analyzing Ms. Nidy's claim alleging the Defendants' tortious interference with a business relationship, the court found her claim deficient because she did not allege the second element of such a cause—an intentional act of interference by a party outside the relationship. *Id*. It noted that Ms. Nidy simply alleged a failure to act by the Defendants. In fact, it cited this court's interpretation of West Virginia law making clear "that an act that leads to interference by coincidence is insufficient." *Id*. at *8. Finally, the District Court dismissed Ms. Nidy's fourth cause of action alleging a breach of a general duty of care. In dismissing Ms. Nidy's claim, which is based upon *Aikens v. Debow*, 208 W. Va. 486, the District Court founds that Ms. Nidy failed to allege facts creating a special relationship between her and the Defendants. *Id*. at *9. Rather, she made conclusory allegations of such a special relationship under the leases between her employer and the Defendants. *Id*. To the contrary, however, the District Court found that "there is no physical injury, no contractual relationship and no close nexus, nor is there any apt allegation of the basis of a special relationship between [Ms. Nidy] and any defendant . . . to show a viable claim on that ground." *Id*.

On July 19, 2019, Ms. Nidy appealed the District Court's disposition.

### III. ANALYSIS

The Defendants assert that the court should dismiss the respective claims against them based upon the Plaintiffs' failure to state causes of action upon which the court can grant relief. Specifically regarding the Property Owners' claims, the Defendants contend that the Plaintiffs fail to state causes of action upon which the court can grant relief because they owed no duty—based in contract or tort—to the Plaintiffs as nearby property owners. Similarly, they contend that the other Plaintiffs failed to allege causes of action based in contract or tort and seemingly assert that the District Court's disposition of Ms. Nidy's action supports granting their motions. The Plaintiffs argue that their respective complaints adequately state plausible causes of action based upon duties created in or by the several loan documents and under West Virginia law.

Regarding the Property Owners' claims, the court finds the District Court's disposition to be highly persuasive as to Counts I, II, and IV, which are identical to claims asserted by Ms. Nidy and dismissed by the District Court. Although the Property Owners' claims are founded upon their ownership of adjoining property as opposed to being an employee like Ms. Nidy, the distinction among their claims is without a difference for purposes of the court adjudging the viability of Counts I, II, and IV. Specifically, the District Court's disposition of Count III of Ms. Nidy's complaint is based upon on her status as an employee of Kmart. The court cannot perceive, however, how that status is relevant to the District Court's disposition of Counts I, II, and IV. The court, therefore, perceives no reason to regurgitate the District Court's thoughtful and complete analysis in those regards. Ms. Nidy, however, did not allege a claim under *Flood*, such that the court must adjudge the sufficiency of the Plaintiffs' complaint in that regard.

In that regard, the parties agree that the dispositive issue is whether the Defendants can be considered adjoining landowners relative to the Property Owners. Both parties rely upon the Restatement (Second) of Contracts § 328 (1981). It provides, among other things, that

> Unless the language or the circumstances indicate the contrary, as in an assignment for security, an assignment of "the contract" of or "all my rights under the contract" or an assignment in similar general terms is an assignment of the assignor's rights and a delegation of his unperformed duties under the contract.

Restatement (Second) of Contracts § 328 (1981). Additionally, comment (b) provides that the section "states rules of presumptive interpretation which yield to a manifestation of a different intention." Additionally, it reiterates that "an assignment as security does not ordinarily delegate performance to the secured party, and the secured party does not assume the assignor's duties."

The Defendants assert that the court should dismiss the cause of action under *Flood* because they do not own, possess, or otherwise control The Crossings Mall. As such, they contend that *Flood* is inapposite because it simply involves riparian rights between adjoining landowners. Moreover, the Defendants contend that the court should narrowly construe the ALR, consistent with its terms, and find that they were not liable to perform the Debtor's duties under the various leases at The Crossings Mall.

The Property Owners counter that the Debtor's absolute and unconditional assignment of leases and rents to the Defendants makes the Defendants liable under *Flood*. Specifically, the Property Owners contend that the Defendants accepted money from tenants specifically for the maintenance of common areas such that they "assumed the contractual and legal duty to act when

6

warned of the precarious condition of the entry" to The Crossings Mall.  At bottom, the Property Owners assert that the ALR and other associated documents caused the Defendants to essentially step into the shoes of the Debtor, making them liable under *Flood*.

Having reviewed the parties' respective arguments, particularly their supplemental briefs on the issue, the court finds it appropriate to grant the Defendants' motion to dismiss Count III of the Property Owners' complaint.  Simply put, the court is unpersuaded that the Debtor's assignment to the Defendants of "[a]ll rights . . . and other benefits of [the Debtor] as lessor . . . including without limitation the immediate and continuing right to make claim for, receive, collect and receipt for all Rents . . ." is broad enough to cause the Defendants to be responsible for maintaining The Crossings Mall as its owner or otherwise performing consistent with ownership thereof.  The court also does not believe the Defendants' conduct consistent with the ALR and associated loan documents—receiving rental payments from tenants—eviscerated the Defendants' limitation on their assumption of duties under the ALR.  As the Defendants make clear in their supplemental brief, the Debtor assigned to it its rights and interest in the subject leases but was careful to not delegate any of its duties to the Defendants.  Specifically, the "Assignment shall not be construed to bind [the Defendants] to the performance of any of the covenants, conditions or provisions contained in any Lease or Lease Guaranty or otherwise impose any obligation upon [the Defendants]."  Regarding maintenance of The Crossings Mall, the ALR likewise provided that "[t]his Assignment shall not operate to place any obligation or liability for the control, care, management or repair of [The Crossings Mall] upon [the Defendants], nor for the carrying out of any of the terms and conditions of the Leases or any Lease Guaranties."

The court finds such limitation in the ALR sufficient to insulate the Defendants from liability under *Flood* and consistent with the Restatement (Second) of Contracts § 328.  It can hardly be said, based upon the terms of the ALR, that the Defendants stepped into the Debtor's shoes regarding the ownership and maintenance of The Crossings Mall.  In fact, the Loan Agreement provides for a "waterfall" by which the Debtor could ultimately receive unrestricted proceeds from the payment of rent to the Defendants, and it is very specific regarding the Debtor's request for Capital Expenditure Funds.  Moreover, the tenants' payment of rent, which included a component segregated as Capital Expenditure Funds, is the only allegation of the Defendants' "control" of The Crossings Mall.  For instance, the Debtor or its agent maintained the property on a day-to-day basis, sought and negotiated new leases and lease renewals, and otherwise operated

and controlled The Crossings Mall. The court will therefore dismiss Count III of the Property Owners' amended complaint.

Turning to Elswick's complaint, the court believes that the District Court's thoughtful and complete analysis in *Nidy* leads to the inexorable conclusion that Elswick's complaint be dismissed. Specifically, Elswick's complaint tracks Ms. Nidy's almost identically except for the assertion of Count I for a breach of contract. That is presumably because Elswick, as a tenant at The Crossings Mall, believes it had a contract with the Defendants based upon the ALR and associated documents. The court perceives no difference in Counts I and II, however, such that the District Court's dismissal of Ms. Nidy's complaint supports a dismissal of Elswick's complaint. Specifically, the court does not believe Elswick's status as a tenant changes the District Court's analysis. As the court outlines above, it does not believe that the ALR sufficiently made the Defendants a party to Elswick's lease with the Debtor. As such, the complaint is subject to dismissal without more supporting the action in light of the "sole benefit" requirement codified in W. Va. Code § 55-8-12. *See Nidy*, 2019 WL 2537418, *4-6.

Moreover, even assuming *arguendo* that Elswick possessed a contract with the Defendants, the court is unpersuaded that Elswick has asserted a plausible cause of action for the Defendants' breach thereof. Specifically, the Plaintiffs simply made a conclusory allegation that the culvert bridge is part of the common area referenced in its lease. Notably, however, Elswick's lease with the Debtor defines Common Areas as "those areas including among other facilities, the parking areas, sidewalks, landscaping, curbs, lighting facilities, canopies, utilities, equipment, improvements, installations and other areas in the Shopping Center . . . ." Moreover, the Debtor demised to Elswick the Premises (approximately 5,000 gross leasable square feet) "in the Shopping Center together with the nonexclusive right to use the Common Areas . . . ." The claim for a breach of contract is therefore not plausible on its face, without more regarding the character of the culvert bridge, based upon the lease definitions of Common Areas and Premises.

Similarly, the court finds that the District Court's dismissal of Ms. Nidy's complaint resolves the Defendants motion to dismiss Mr. Crum's complaint here. Mr. Crum, on behalf of himself and those similarly situated, allege only two causes of action. The first, alleging a "Breach of General Duty of Care," is identical to Ms. Nidy's fourth cause of action dismissed by the District Court. The court sees no reason to restate the District Court's comprehensive analysis in that

8

regard. Similarly, the court does not perceive a difference in Mr. Crum's causes of action such that it finds the District Court's memorandum opinion dispositive of both counts.

## IV. CONCLUSION

Based upon the foregoing, the court finds it appropriate to grant the Defendants' motions to dismiss the respective adversary proceedings. Pursuant to Fed. R. Civ. P. 58(a), made applicable here by Fed. R. Bankr. P. 7058, the court will enter a separate order dismissing each adversary proceeding.